IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:11CR236 |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS |
| CHADWICK DEAN GRANT, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on a motion to suppress filed by defendant Chadwick Dean Grant (Grant). See Filing No. 18. Grant is charged in the Indictment with possession with the intent to distribute 28 grams or more of a substance containing cocaine base (i.e., crack cocaine) (Count I) and possession with the intent to distribute a substance containing cocaine (Count II), both in violation of 21 U.S.C. § 841(a)(1) and (b)(1). See Filing No. 1. Grant seeks to suppress all evidence obtained by law enforcement officers following the traffic stop that occurred on June 14, 2011, arguing the traffic stop was unnecessarily prolonged, without his consent, while waiting twenty-two minutes for a law enforcement canine to arrive. See Filing No. 18.

On September 1, 2011, the court held an evidentiary hearing on the motion. Grant was present with his counsel, Federal Public Defender David R. Stickman. Assistant United States Attorney Justin C. Dawson represented the United States. During the hearing, the court received into evidence a video disk of the traffic stop (Exhibit 1). During the hearing, the court heard the testimony of Sergeant Jeffrey Wilcynski (Sergeant Wilcynski) of the Nebraska State Patrol (NSP). A transcript (TR.) of the hearing was filed on September 8, 2011, upon which the motion was deemed submitted. See Filing No. 26.

**FINDINGS OF FACT**

On June 14, 2011, at 2200 hours, NSP Sergeant Wilcynski conducted a traffic stop of Grant for speeding near mile marker 304 on eastbound Interstate 80, approximately five miles west of Grand Island, Nebraska (TR. 9-10, 32). Sergeant Wilcynski drove a marked

police vehicle and wore a uniform with a firearm and badge (TR. 23). Sergeant Wilcynski walked up to the passenger side of the vehicle and spoke to Grant about the reason for the stop, the vehicle paperwork, and the owner of the vehicle (TR. 10-11). Grant's girlfriend owned the vehicle, but was not present (TR. 11). Sergeant Wilcynski observed one small gym bag behind the driver's seat as the only luggage visible in the vehicle (TR. 34). Sergeant Wilcynski informed Grant he would be issued a warning ticket (TR. 11). Sergeant Wilcynski asked Grant to step back to the patrol vehicle (TR. 11). While filling out the paperwork for the ticket, Sergeant Wilcynski conducted standard information checks about Grant and the vehicle (TR. 11). Sergeant Wilcynski asked Grant questions about his travel (TR. 34). Grant stated he had planned to be in Denver, Colorado, for a one and one-half weeks, but was returning to Macy, Nebraska, after only a few days (TR. 34; Ex. 1). Sergeant Wilcynski thought the amount of luggage he had seen was inconsistent with the planned duration of the trip (TR. 33-34). In response to questions, Grant stated his girlfriend did not accompany him because she had to work (TR. 34). Sergeant Wilcynski asked where she worked and Grant paused for several seconds, then responded she worked at an insurance company and danced (TR. 34). Sergeant Wilcynski thought the pause was out of the ordinary because Grant would likely know where his girlfriend worked without having to pause as if he were searching for an answer (TR. 34-35). Sergeant Wilcynski suspected the owner of the vehicle may not truly be Grant's girlfriend (TR. 34-35). Grant stated he had a lawn service and a dump truck (TR. 35). Sergeant Wilcynski thought it was unusual for someone with a dump truck to take a two-week trip when the flooding in nearby Iowa made everyone very busy (TR. 35). Sergeant Wilcynski also learned Grant had a criminal history including a drug-related conviction (TR. 24-25, 35). After Sergeant Wilcynski issued the warning ticket to Grant, and said "have a good night," Grant started to exit the patrol vehicle, then stopped to ask if he had received his insurance document back (TR. 11-12; Ex. 1 - 9:54). Sergeant Wilcynski assured Grant that the insurance document was inside the vehicle (Ex. 1 - 10:03).

After Grant exited, Sergeant Wilcynski said to Grant, "Hey, I do have another question, do you mind coming back in?" (TR. 12). Grant got back into the patrol vehicle (TR. 12). Grant was cooperative (TR. 23). Grant did not appear agitated, angry, or

concerned (TR. 12). Sergeant Wilcynski asked Grant about his criminal history, how many times he had been in trouble and if he spent time in jail (TR. 13). Grant explained the drug charge was related to marijuana possession on one occasion (TR. 13; Ex. 1). Sergeant Wilcynski asked Grant if he had any marijuana in the vehicle (TR. 13). Grant said, "no" (TR. 13). Sergeant Wilcynski asked Grant if he had any methamphetamine or cocaine in the vehicle (TR. 13). Grant said, "no" (TR. 13). Sergeant Wilcynski asked Grant if he would consent to a search of the vehicle (TR. 13). Grant said, "I'd rather not" (TR. 13; Ex. 1 ). Then the following exchange took place.

| Sergeant Wilcynski | Can I ask why? |
|---|---|
| **Grant:** | **I just want to leave, that's all.** |
| Sergeant Wilcynski: | I think what we're going to do, is because of your– I mean, what would you think about it, if I had a dog come and go around it? If he doesn't indicate anything, then we'll get you going. |
| **Grant:** | **Okay.** |
| Sergeant Wilcynski: | Is that all right? |
| **Grant:** | **Sure.** |
| Sergeant Wilcynski: | Okay. |
| **Grant:** | **I guess so.** |

Ex. 1 - 10:39 to 11:07.

Grant's demeanor did not change during or after the verbal exchange (TR. 14). Grant did not appear more nervous (TR. 14). Sergeant Wilcynski understood that Grant did not want the officer to search the interior of the vehicle, but Grant agreed to allow the officer to bring a dog to walk around the outside of the vehicle (TR. 15, 28). Based on that conversation, Sergeant Wilcynski used his radio to call dispatch and request a canine officer (TR. 15).

During this process, Sergeant Wilcynski informed dispatch that Grant had denied consent, meaning he denied his consent for a interior search of the vehicle (TR. 15-16; Ex. 1 - 11:30). After the conversation with dispatch, Grant asked Sergeant Wilcynski whether he informed dispatch that Grant had granted his consent (TR. 16). Sergeant Wilcynski confirmed to Grant that Sergeant Wilcynski told dispatch that Grant had denied his consent to search (TR. 16). Sergeant Wilcynski understood the conversation to clarify that Grant declined consent to search the interior of the vehicle, rather than denied consent to remain

at the scene of the traffic stop until the canine officer arrived (TR. 16). Grant made no other comments about wanting to leave and had no other questions about the procedure (TR. 16-17).

Approximately thirteen minutes after sitting in the patrol vehicle, another officer drove up behind Sergeant Wilcynski and walked to the driver's window (TR. 17). The officers had a discussion about a storm in the Lincoln, Nebraska, area, which was producing ping-pong sized hail (TR. 17). Grant participated in the conversation and commented that he was glad he was parked rather than driving his girlfriend's vehicle into a storm with hail (TR. 18).

The canine officer arrived approximately twenty-two minutes after the initial request (TR. 21). The canine officer had been off-duty prior to the call (TR. 21). The canine alerted to the vehicle (TR. 22). The officers then conducted a search and located cocaine and crack cocaine (TR. 22).

## LEGAL ANALYSIS

Grant concedes Sergeant Wilcynski had probable cause for the initial traffic stop of the vehicle. **See** Filing No. 19 - Brief p. 6. Moreover, Grant concedes that once the law enforcement canine alerted, probable cause existed to search the vehicle. *Id.* Grant contests the reasonableness of his detention. The parties dispute whether, after Grant denied consent to search, he gave his consent to wait for the law enforcement canine to sniff the exterior of the vehicle. Grant argues no reasonable suspicion existed to detain him or conduct an investigatory stop of the vehicle after Sergeant Wilcynski issued the warning ticket. For these reasons, Grant seeks to suppress any evidence stemming from the June 14, 2011, traffic stop of the vehicle.

A law enforcement officer's observation of a traffic violation provides probable cause to stop a vehicle. *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011); **see** *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (**citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). Contemporaneous with a valid traffic stop, the officer may "conduct an investigation that is reasonably related in scope to the circumstances that initially justified the stop." *United States v. Bracamontes*, 614 F.3d 813, 816 (8th Cir.

4

2010). In fact, a police officer may detain the occupant while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008); **see also** *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Additionally, the police officer may inquire about the driver and other occupant's destination, purpose of the trip and whether the police officer may search the vehicle. *Bracamontes*, 614 F.3d at 816; *United States v. Gill*, 513 F.3d 836, 845 (8th Cir. 2008); *United States v. Williams*, 431 F.3d 296, 298 (8th Cir. 2005); *United States $404,905.00 in v. U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999). "If the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." *United States v. Ward*, 484 F.3d 1059, 1061 (8th Cir. 2007) (**quoting** *United States v. Johnson*, 58 F.3d 356, 357 (8th Cir. 1995)). In any event, the scope and length of any investigation must be reasonable. *United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008). "The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *United States v. Ward*, 484 F.3d 1059, 1062 (8th Cir. 2007) (**quoting** *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir.1994) (en banc)); **see** *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 459 (8th Cir. 2011). "A constitutionally permissible traffic stop can become unlawful, however, 'if it is prolonged beyond the time reasonably required to complete' its purpose." *United States v. Shafer*, 608 F.3d 1056, 1062 (8th Cir. 2010) (**quoting** *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Moreover, "a brief detention for a dog sniff at the end of a traffic stop is *de minimis* and does not violate the Fourth Amendment." *Id.* at 1014 (dog alerted two minutes after motorist declined consent to search); *United States v. Alexander*, 448 F.3d 1014, 1017 (8th Cir. 2006) (four minutes). Absent reasonable suspicion to justify further detention, an officer "may extend a traffic stop beyond its normal completion if the encounter has become consensual." *United States v. Rivera*, 570 F.3d 1009, 1013 (8th Cir. 2009). A motorist necessarily consents to an extension of the traffic stop when he consents to a search of the vehicle. *Id.*

"Whether consent is voluntary is a question of fact, reviewed for clear error, considering whether from the totality of the circumstances the officer reasonably believed the search was consensual." *United States v. Garcia*, 613 F.3d 749, 753 (8th Cir. 2010). Some personal characteristics that aid in determining voluntariness of consent are age, intelligence, whether an individual was under the influence of drugs or alcohol, whether an individual was read his *Miranda* rights, and whether an individual had experienced prior arrests. See *United States v. Hambrick*, 630 F.3d 742, 747-48 (8th Cir. 2011) (listing factors). A court may also look at environmental factors including, the period of time that the individual was detained; whether the police threatened, physically intimidated, or punished the individual; whether promises or misrepresentations were made upon which the individual relied; whether the individual was in custody or under arrest at the time of consent; whether the consent occurred in a public or secluded place; and whether the individual objected or stood by silently while the search occurred. *Id.* These listed factors are a non-exhaustive list to assist the court's determination. *United States v. Quintero*, 648 F.3d 660, 667 (8th Cir. 2011). The government bears the burden of proving voluntary consent by a preponderance of evidence. *United States v. Muhlenbruch*, 634 F.3d 987, 999 (8th Cir. 2011). The government must prove "the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (footnotes omitted). "In order for a consensual search to be valid, consent must actually be given (either express or implied), and the person giving consent must have (actual or apparent) authority to do so." *United States v. Luken*, 560 F.3d 741, 744 (8th Cir. 2009).

In this case, Grant argues he did not give his consent to prolong the encounter beyond the purpose of the initial traffic stop. Otherwise, Grant does not argue the length of the actual traffic stop was prolonged. The traffic stop lasted only briefly and ended when Sergeant Wilcynski presented Grant with a warning ticket and bid him good night. See *Garcia*, 613 F.3d at 753 ("Once an officer issues a warning, the stop is over."). Immediately upon the conclusion of the traffic stop, Sergeant Wilcynski briefly engaged Grant in a few additional questions. "[T]he Fourth Amendment is not implicated, and the

6

officer is not prohibited from asking questions unrelated to the traffic stop or seeking consent to search the vehicle." *Garcia*, 613 F.3d at 753.  A post-stop encounter is consensual where, after receiving a warning ticket, the motorist starts to leave, but stops and returns to answer questions posed by law enforcement.  *Id.*  Under these circumstances, a motorist's behavior indicates consent to further discussion.  *Id.*  This case is nearly identical to the facts of *Garcia*.  After exchanging pleasantries at the conclusion of the traffic stop, the motorist asked one last question of the officer, then started to leave.  In *Garcia*, the officer then asked, "I have another question for you, if you don't mind?"  *Id.*  Here, Sergeant Wilcynski said to Grant, "Hey, I do have another question, do you mind coming back in?" (TR. 12).  Grant sat back down in the patrol unit and answered additional questions.  Grant's conduct indicated his consent for further discussion.  When, after a few questions, Sergeant Wilcynski asked for consent to search the vehicle, Grant declined.  Grant's behavior indicated he felt free to leave.

Sergeant Wilcynski's request for Grant to wait for a canine officer was worded less than ideally.  However, it was clear in the context of the situation and under the circumstances that Grant appeared to recognize it as a question seeking his affirmative or negative response.  Sergeant Wilcynski said, "I think what we're going to do, is because of your– I mean, what would you think about it, if I had a dog come and go around it?  If he doesn't indicate anything, then we'll get you going."  Grant unequivocally responded, "okay."  Sergeant Wilcynski followed up with another question, "Is that all right?," which cleared up any ambiguity created by the first question.  Although Grant verbally consented to allow Sergeant Wilcynski to call a canine officer by saying, "okay" and "sure," Grant argues the manner in which he said, "okay" was not as a direct response, but "still somewhat questioning" (TR. 27).  Even if this is true, Sergeant Wilcynski asked the follow up question for additional clarity and received a clear and firm, "sure."  Upon review of the traffic stop video, the court can hear the inflection in Grant's voice when he responded with an unequivocal "sure," affirming his consent to allow Sergeant Wilcynski to call a canine officer. In addition to this verbal consent, Grant was an adult who understood English, was not under the influence of drugs, and had prior arrest experience.  The encounter had lasted only a few minutes up to that point.  Sergeant Wilcynski made no threats, promises,

or misrepresentations, and Grant was not under arrest. Grant later engaged Sergeant Wilcynski in cordial conversation while they waited for the canine officer and even expressed his ease with waiting while a storm passed over his intended route. Under these circumstances, the court finds Grant voluntarily consented to the twenty-two minute post-stop encounter. For this reason, the court finds the detention and search were constitutionally reasonable.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Chadwick Dean Grant's Motion to Suppress (Filing No. 18) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 5th day of October, 2011.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.